IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CRISTIAN FLORIAN ZEPEDA, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> RIVERA MAINTENANCE LANDSCAPING, LLC, *et al.*, <br><br> *Defendants* | Case No. 24-cv-1952-ABA |

**MEMORANDUM OPINION AND ORDER**

In this wage and hour case, Plaintiffs Cristian Florian Zepeda and Antony Gamaliel Florian Zepeda contend they were employed by defendants Rivera Maintenance Landscaping LLC ("RML") and Santiago Osmario Rivera ("Rivera"), collectively "Defendants", and that Plaintiffs, on behalf of RML, performed work for defendant Life Time Improvements Inc. d/b/a/ Life Time Pavers ("Life Time"). ECF No. 13 ("Am. Compl."). The Defendants have pleaded the following affirmative defense:

> Plaintiffs' claims are barred on the ground that, upon information and belief, Plaintiffs are illegal immigrants/ workers, are not permitted to legally work in this country, provided Defendants with fraudulent Social Security Numbers, and/or lack standing.

ECF No. 6 at 9 ("Tenth Affirmative Defense").[1]

Plaintiffs have filed a motion (1) for a protective order precluding "discovery into Plaintiffs' immigration status, their social security numbers, tax filing status, or other

---

[1] That answer was filed in response to Plaintiffs' original complaint (ECF No. 1), not the amended complaint (ECF No. 13). The parties appear to treat Defendants' answer as responsive to the amended complaint. Accordingly, at least for present purposes, the Court will do the same.

1

irrelevant facts that may bear on Plaintiffs' immigration status," (2) to strike Defendants' Tenth Affirmative Defense, and (3) for payment of Plaintiffs' attorneys' fees and costs incurred in connection with the motion. ECF No. 29 ("Mot."). Defendants have responded, ECF No. 30 ("Opp."), and Plaintiffs have replied, ECF No. 32 ("Reply"). For the following reasons, the motion for a protective order will be granted in part and denied in part, and the affirmative defense will be stricken. Plaintiffs' request for attorneys' fees and costs will be denied.

## I. BACKGROUND

Plaintiffs have brought this case pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 ("FLSA"), the Maryland Wage and Hour Law, Md. Code Ann. Lab. & Empl. §§ 3-415 and 3-427 ("MWHL"), and the Maryland Wage Payment and Collection Law, Md. Code Ann. Lab. & Empl. §§ 3-505 and 3-507.2 ("MWPCL"). They allege they were employed by RML for several years until February 2024. Am. Compl. ¶¶ 2, 6.[2] Cristian alleges he "worked on constructing hardscaping features for residential and commercial clients," and Antony alleges he performed "general landscaping and landscaping construction duties." *Id.* ¶¶ 4, 8. Although they were employed directly by RML, they allege that Mr. Rivera personally constituted an "employer" within the meaning of the FLSA, MWHL and MWPCL. *Id.* at 5.[3]

In counts 1, 2 and 3, Plaintiffs allege that Rivera failed to pay an overtime premium for overtime hours, and failed to "pay them anything at all for some of their

---

[2] Cristian alleges he began work around April 2019 and Antony alleges he began work around March 2021. Am. Compl. ¶¶ 2, 6.

[3] The amended complaint contains paragraph-numbering errors: the numbering restarts with paragraph number "4" on page 5. References herein to the amended complaint on or after page 5 will cite using page numbers.

work time." *Id.* at 13-15. In count 4, Plaintiffs allege that Life Time is liable under the MWPCL because it "was a 'general contractor' on multiple projects that Plaintiffs were assigned to work on within the meaning of Md. Code Ann., Labor & Employment § 3-507.2(c)(2)," and the work was on "projects for construction services within the meaning of Md. Code Ann., Labor & Employment § 3-901(b)," and thus that Life Time is itself liable for Plaintiffs' allegedly unpaid wages, liquidated damages, attorneys' fees, and litigation costs. *Id.* at 16.

## II.   DISCUSSION

As noted above, when Rivera filed its answer, it pled the affirmative defense above, contending that Plaintiffs' claims are "barred" because, "upon information and belief," Plaintiffs "are illegal immigrants/workers, are not permitted to legally work in this country, provided Defendants with fraudulent Social Security Numbers, and/or lack standing." ECF No. 6 at 9.

### A.   Discovery

Plaintiffs request a protective order to preclude Defendants from "inquir[ing] into the following subject areas at Plaintiffs' respective depositions, or at any other time during the remaining course of discovery in this case":

> (1) the immigration status of the Plaintiffs or their family members; (2) the Plaintiffs' tax returns; (3) the social security numbers or other tax identification numbers of Plaintiffs; (4) the Plaintiffs' identification documents; (5) the Plaintiffs' national origin, ethnicity, or religious beliefs; (6) other documents or information likely to lead to discovery of the Plaintiffs' immigration status.

Mot. at 8. They argue that "discovery into immigration status, in cases brought under Title VII and the Fair Labor Standards Act, is not permissible where the claim is for

3

wages already earned, because it's irrelevant and not a defense to the claim." *Id.* at 3-4 (citing cases).

A party in a civil case may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts must consider, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* In addition, "[a] party or any person from whom discovery is sought may move for a protective order" where, for example, such an order is appropriate to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). A party seeking a protective order bears the burden of establishing that "good cause" exists for such relief. *Id.*

Courts routinely bar or limit discovery into immigration status in cases involving claims under the FLSA and similar statutes, and have done so for decades. *See, e.g.*, *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064 (9th Cir. 2004); *Rosas v. Alice's Tea Cup, LLC*, 127 F. Supp. 3d 4, 8-11 (S.D.N.Y. 2015); *Marquez v. Erenler, Inc.*, Case No. 12-cv-8580, 2013 WL 5348457, *1 (S.D.N.Y. Sept. 20, 2013); *Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 212-14 (N.D. Ill. 2010); *Barrera v. Boughton*, Case No. 3:07cv1436(RNC), 2010 WL 1240904, *2-6 (D. Conn. Mar. 19, 2010); *Montoya v. S.C.C.P. Painting Contractors, Inc.*, 530 F. Supp. 2d 746, 750-51 (D. Md. 2008); *Galaviz-Zamora v. Brady Farms, Inc.*, 230 F.R.D. 499, 502-03 (W.D. Mich. 2005); *EEOC v. First Wireless Grp., Inc.*, 225 F.R.D. 404, 406-07 (E.D.N.Y. 2004); *Zeng Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 192-93 (S.D.N.Y. 2002).

Information about FLSA plaintiffs' immigration status is simply irrelevant in such cases because "undocumented workers are 'employees' within the meaning of the

FLSA and . . . such workers can bring an action under the act for unpaid wages and liquidated damages." *Patel v. Quality Inn S.*, 846 F.2d 700, 706 (11th Cir. 1988). "The FLSA does not allow employers to exploit any employee's immigration status or to profit from hiring [undocumented immigrants] in violation of federal law." *Lucas v. Jerusalem Cafe, LLC*, 721 F.3d 927, 930 (8th Cir. 2013); *see also, e.g.*, *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 243 (2d Cir. 2006) (explaining that an order that an employer "pay his undocumented workers the minimum wages prescribed by the [FLSA] . . . for labor actually and already performed" serves in part to "ensur[e]" that the employer "does not take advantage of the violation by availing himself of the benefit of undocumented workers' past labor without paying for it in accordance with minimum FLSA standards"); *Ruano v. Scratch Kitchen & Bistro, LLC*, Case No. 23-cv-2461-DKC, 2024 WL 3555095, *6 (D. Md. July 24, 2024) ("The FLSA and MWHL cover all employees regardless of immigration status.").

Not only is immigration status "irrelevant" to whether an employer has violated the FLSA, the MWHL or the MWPCL, *Mancilla*, 2024 WL 361328, at *2, but such discovery is out of bounds because of "the chilling effect that such compelled disclosure would have on enforcement of the FLSA." *Marquez*, 2013 WL 5348457, at *1. And even if there were some theoretical relevance of a plaintiff's immigration status, it is substantially outweighed by the "burden . . . of the proposed discovery" and by "annoyance, embarrassment, [and] oppression," all considerations that Rule 26 directs courts to consider in policing the bounds of permissible civil discovery. Fed. R. Civ. P. 26(b)(1) & (c)(1). After all, such evidence likely would not be admissible at trial either. *See Lucas*, 721 F.3d at 939 ("Because the workers were seeking redress only for work actually performed, the district court reasonably concluded any reference to the

5

workers' immigration status would be substantially more prejudicial than probative under Rule 403.").

In the face of these well-settled principles, Defendants make three arguments for why they should be permitted to take discovery into Plaintiffs' immigration status.

First, Defendants argue the motion should be denied as untimely, because it was filed about two and a half months after Defendants filed their answer. Opp. at 1. But the filing of the answer did not impose a rigid deadline for filing a motion for a discovery-related protective order. Plaintiffs filed the motion once it appears to have become clear that Defendants intended to pursue the discovery at issue. The motion will not be denied on timeliness grounds.

Second, Defendants argue Plaintiffs' immigration status is relevant to the parties' claims and defenses because "the Supreme Court has denied employees the remedy of back pay based on their illegal immigration status." Opp. at 2 (citing *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002)). Plaintiffs argue that *Hoffman* "has no applicability in FLSA cases," and in any event, "[b]ecause Plaintiffs in this case are seeking their earned but unpaid wages, as opposed to backpay, *Hoffman Plastics* does not apply, regardless of Plaintiffs' immigration status." Reply at 2-3 (citing cases, including *Wondimante v. Assefa*, Case No. 04-cv-3718-DKC, 2006 WL 8456986 (D. Md. Mar. 2, 2006)).

Plaintiffs have the correct side of this argument. *Hoffman Plastics* involved a particular remedy arising under the National Labor Relations Act for employees wrongfully *terminated* in violation of the Act, namely a monetary award equal to wages that an employee *would have earned* but for the wrongful termination. 535 U.S. at 141-42. As courts have repeatedly held, *Hoffman* is "limited . . . to cases where claims of

6

backpay are made for work '*not performed*.'" *Galaviz-Zamora*, 230 F.R.D. at 501 (quoting *Flores v. Amigon*, 233 F. Supp. 2d 462, 463 (E.D.N.Y. 2002)) (emphasis added); *see also Rivera*, 364 F.3d at 1068 ("*Hoffman* does not resolve the question whether federal courts may award backpay to undocumented workers who have been discharged in violation of Title VII."); *Lucas*, 721 F.3d at 935 ("Far from concluding the NLRA did not protect unauthorized aliens for work *actually* performed, the *Hoffman* court—after considering Congress's intervening enactment of the [Immigration Reform and Control Act]—reaffirmed its earlier holding in *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883 [. . .] (1984), that the NLRA applies to the *actual* employment of unauthorized aliens."); *Flores*, 233 F. Supp. 2d at 463 (explaining that *Hoffman* "did not expressly deal with the circumstances presented here, where the plaintiffs ha[ve] already performed the work for which unpaid wages were being sought"); *Wondimante*, 2006 WL 8456986, at *3 n.1 ("Because Plaintiff seeks past wages, as opposed to backpay, a *Hoffman Plastic* defense is not available regardless of Plaintiff's immigration status."). Although the Fourth Circuit does not appear to have addressed the issue,[4] there is no reason to believe the Fourth Circuit would create a circuit split on it. Here, Plaintiffs' claims arise from work they allege they performed for Defendants, *i.e.*, they "seek fair compensation for work

---

[4] The closest appears to be *EEOC v. Mar. Autowash, Inc.*, 820 F.3d 662 (4th Cir. 2016). There, the employer sought to quash an EEOC administrative subpoena, contending that *Hoffman Plastic* required interpreting Title VII to not cover undocumented workers. *Id.* at 665. The Fourth Circuit rejected that argument. It did so principally because of the "premature posture" of the case. *Id.* at 667. But it also explained that it was rejecting the notion that an employer may "hire illegal immigrants and then unlawfully discriminate against those it unlawfully hired" or otherwise "impose all manner of harsh working conditions upon undocumented aliens"—and thereby "privilege employers who break the law above those who follow the law"—without legal consequence. *Id.* at 668.

already performed." *Galaviz-Zamora*, 230 F.R.D. at 502. Accordingly, *Hoffman* has no bearing on the claims or defenses presented here.

Third, Defendants argue that even if immigration status is irrelevant to their causes of action, and even if their immigration-status affirmative defense is stricken (which it will be, as discussed below), Plaintiffs' immigration status should still be discoverable because Defendants have also raised an affirmative defense of "unclean hands." Opp. 2-3; *see also* ECF No. 6 (Answer) at 8 ("Plaintiffs' claims are barred in whole or part by the doctrine of unclean hands and/or failure to act equitably."). Defendants have not actually pled that Plaintiffs engaged in any "inequitable conduct." *Cf.* Opp. 2 (quoting *Hicks v. Gilbert*, 135 Md. App. 394, 400 (2000)). But in their opposition brief they pose this hypothetical: "If Plaintiffs have engaged in fraud in relation to their underlying employment with Defendants (*e.g.*, using fraudulent documents to obtain their employment with Defendant), Defendant should be allowed to conduct discovery into the same at this stage of the proceedings." Opp. 2.

This attempt to end-run the well-settled irrelevance of immigration status in FLSA cases is unavailing. Not only have Defendants not even proffered, let alone pled or shown, that Plaintiffs presented any "fraudulent documents," but Defendants also have not identified a single case suggesting that, even if true, that would constitute a defense to a violation of the FLSA, MWHL or MWPCL. The two cases they cite, *Hicks*, 135 Md. App. at 400, and *Manown v. Adams*, 89 Md. App. 503, 513 (1991), stand merely for the general proposition that the unclean hands doctrine "refuses recognition and relief from the court to those guilty of unlawful or inequitable conduct pertaining to the matter in which relief is sought" in order to "protect[] the integrity of the court and the judicial process by denying relief to those persons 'whose very presence before a court is the

8

result of some fraud or inequity.'" *Hicks*, 135 Md. App. at 400 (quoting *Manown*, 89 Md. App. at 511). There is no basis for the notion that working while lacking immigration status constitutes "fraud or inequity" such as to disentitle such workers from their statutory rights to be paid for their work. The well-settled law, discussed above, is squarely to the contrary, and confirms that the FLSA extends to *all* employees, regardless of immigration status.

For these reasons, Defendants will be precluded from seeking or obtaining in discovery information or documents that would reveal Plaintiffs' immigration status.

But that does not entirely dispose of Plaintiffs' request for a protective order, because Plaintiffs' motion also seeks an order that Defendants be precluded from obtaining Plaintiffs' tax returns or "other documents or information likely to lead to discovery of the Plaintiffs' immigration status." *See* Mot. at 8.

As for tax returns, courts often apply the following standard: "tax returns are discoverable if (1) they are relevant to a matter in dispute; and (2) they are needed, because the information is not available from other sources." *See, e.g.*, *Prusin v. Canton's Pearls, LLC*, Case No. 16-cv-605-JKB, 2016 WL 7408840, at *4 (D. Md. Dec. 22, 2016) (quoting *Hastings v. OneWest Bank, FSB*, Case No. 10-cv-3375-GLR, 2013 WL 1502008, at *2 (D. Md. Apr. 11, 2013) (internal citations omitted)). "The party seeking disclosure carries the burden to show that the tax returns are relevant, and the resisting party carries the burden to identify an alternate source of the information." *Id.* (quoting *Hastings*, 2013 WL 1502008, at *2). Without deciding whether that is always the appropriate standard for whether tax returns are discoverable, the Court concludes that is an appropriate standard here, where Plaintiffs contend that production of tax returns—at least in unredacted form—would disclose their immigration status.

9

Plaintiffs do not dispute that "income earned by Plaintiffs from other sources during the relevant period may be relevant to the Defendants' independent contractor defense," but contend that Defendants have not shown a *need* for their tax returns because any *relevant* information that may appear on such returns can be obtained "from other sources such as deposition testimony, or paystubs (to the extent such documents exist)." Reply at 5. But Plaintiffs have not shown that such other documents do exist, and also have not explained why there are not ways to produce tax returns without disclosing immigration status—such as through redaction. Accordingly, insofar as there is no way for Plaintiffs to produce their tax returns without disclosing their immigration status, then those returns need not be produced. But insofar as they can be redacted to avoid disclosure of immigration status, then Plaintiffs' request is denied and such returns must be produced. The same distinction applies to other documents that may be responsive to Defendants' requests for production of documents.

### B.     Motion to Strike

Plaintiffs next request, pursuant to Federal Rule of Civil Procedure 12(f), is for an order striking the Defendants' tenth affirmative defense because "Defendants have pled immigration status as an affirmative defense solely to annoy and harass the Plaintiffs" and "there is not even a colorable argument that immigration status is a defense to a claim for unpaid wages under the FLSA or the related state wage laws." Mot. at 4.

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001)

(quoting 5A A. Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380, 647 (2d ed. 1990)). "Nevertheless, 'a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." *Id.* (quoting 5A A. Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1381)). In *Waste Management*, the Fourth Circuit affirmed an order striking a "purported affirmative defense" as to which Defendants could point to no legal or factual basis. *Id.* at 347.

Here, for the reasons stated above, Plaintiffs' immigration status is irrelevant to the claims they have asserted in this case. The Defendants' tenth affirmative defense is "insufficient" within the meaning of Rule 12(f), and implicates "immaterial [and] impertinent . . . matter." Accordingly, it will be stricken.

### C. Plaintiffs' Request for Fees/Costs

Finally, pursuant to Rule 37(a)(5), Plaintiffs seek to recover their attorneys' fees and costs incurred in litigating their motion for a protective order and to strike the affirmative defense. Mot. at 6 (citing Fed. R. Civ. P. 37(a)(5)). Under that Rule, where a motion for a protective order is granted, the court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). If any of the latter circumstances exist, then the Court "must not" order payment of fees or costs. *Id.*

Here, Plaintiffs do appear to have attempted in good faith to secure Defendants' agreement to the requested relief in advance of filing the motion. *See* ECF Nos. 29-2, 29-3. And at least with respect to discovery over Plaintiffs' immigration status, Defendants' position is not "substantially justified" within the meaning of Rule 37, in light of the clear and settled caselaw that immigration status is not relevant or discoverable in FLSA cases. Nonetheless, the Court concludes that two other "circumstances make an award of expenses unjust." First, as discussed above, Plaintiffs' requested relief was not narrowly tailored to preclude discovery of immigration status. *See* § II.A, *supra*. Second, as to the motion to strike the affirmative defense, although it is clear the defense should be stricken, such motions are generally disfavored, as noted above. Accordingly, Plaintiffs' request for an award of fees and costs in connection with the instant motion is denied.

### III.   CONCLUSION AND ORDER

For the forgoing reasons, it is hereby ORDERED as follows:

1.   Plaintiffs' Motion for a Protective Order and Motion to Strike Defendants' Tenth Affirmative Defense and for an Award of Attorneys' Fees and Costs (ECF No. 29) is GRANTED IN PART AND DENIED IN PART.

2.   Plaintiffs' request for a protective order is GRANTED, such that Plaintiffs need not disclose in discovery—through testimony, interrogatory answers, document production or otherwise—the immigration status of the Plaintiffs or their family members. Insofar as documents such as tax returns otherwise contain relevant and discoverable information, they must be produced, but portions revealing immigration status may be redacted. If such documents cannot be produced at all without disclosing immigration status, they need not be produced, but Plaintiffs shall produce a log

describing such documents generally to provide Defendants sufficient information to know the general nature of documents that are responsive to discovery requests but are being withheld on the basis of this Order.

    3.    Plaintiffs' request to strike the Defendants' tenth affirmative defense (ECF No. 6 at 9) is GRANTED, and that affirmative defense is deemed STRICKEN with prejudice.

    4.    Plaintiffs' request for their attorneys' fees and costs in connection with this motion is DENIED.

Date: February 5, 2025             _____/s/_____
                                                                    Adam B. Abelson
                                                                    United States District Judge